William A. Halbert, Appellee, v. Springfield Motor Boat Club, Appellant.

Gen. No. 9,744.

Opinion filed March 7, 1951. Released for publication April 3, 1951.

EARL S. HODGES, of Springfield, for appellant; MAURICE KEPNER, of Springfield, of counsel.

JOHN W. CURREN, HERMAN H. COHN, and THOMAS W. HOOPES, all of Springfield, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

This appeal is by defendant, Springfield Motor Boat Club, an Illinois corporation, from a judgment for $3,750 entered in favor of plaintiff, William A. Halbert, and against defendant on a verdict of a jury.

Each of the three counts of the complaint charged that at all times in question plaintiff was in the exercise of due care for his own safety, that on October 31, 1943, in Sangamon county the defendant operated a club for the convenience and pleasure of its members for social and pleasure activities, and owned and operated, by its servant, on a lake in said county a hoist, operated by a crank, for the purpose of raising boats out of the water, that plaintiff was a member of the club, that while plaintiff with the permission of another member was in a motor boat owned by such other member, the latter started to operate the hoist and raised the boat above the water level when the machinery of the hoist stuck and would not work, and such other member then requested the operator of the hoist, defendant's servant, to adjust and correct such machinery, which such

servant proceeded to do while plaintiff was in the boat, and proceeded to operate the hoist and raised the boat about two feet above the water.

The first count further alleged that defendant negligently permitted the hoist and its mechanism to be in disrepair and in a defective condition, that the defendant knew or should have known of such condition, that when the boat was about two feet above the water, because of such defective state of disrepair, the boom of the hoist fell on and injured plaintiff.

Counts two and three further alleged that when the boat was about two feet above the water and while plaintiff was in the boat the servant of defendant negligently and carelessly operated the hoist whereby the boom fell on plaintiff and as a result plaintiff was injured.

The answer admitted the allegations relative to the purpose of the defendant, and the ownership and operation of the hoist, but denied that defendant or its servant did any of the acts of negligence complained of, and denied that the machinery was faulty or in disrepair.

In its answer defendant set up three affirmative defenses. The first was that defendant was not liable for the torts of its agent because it was duly organized for amusement, and not for pecuniary profit, that its only sources of income were initiation fees, annual dues, and such revenue as it obtained from incidental club social activities, such as benefit programs, and service of refreshments and foods, and that its by-laws provided that the Board of Directors was to control and manage the property of the club and the appropriation of its funds, and make all contracts and purchases, but had no power to make the club liable for any debt other than ordinary running expenses.

The second affirmative defense alleged that plaintiff's injuries were caused in whole or in part by negligence on the part of the plaintiff or his agents. The

third affirmative defense alleged that Jack Robinson, a club member, was the proximate cause of the injury, and not the defendant.

Plaintiff filed a reply denying the second and third affirmative defenses and made a motion to strike the first affirmative defense on the ground that the allegations therein contained did not constitute a defense as a matter of law. The trial court allowed such motion.

Plaintiff and one Jack Robinson were members of the defendant. Lloyd Hare was employed by defendant, and had charge of maintaining and keeping the hoist in repair. It was his duty when requested to assist any member in removing a boat from the water.

On October 31, 1943, plaintiff and Robinson went to defendant's premises for the purpose of taking Robinson's motor boat out of the lake, they first took a short ride in the boat and Robinson then went to the club house to get a crank with which to operate the hoist, plaintiff fastened to the boat the lifting hooks which were attached to the boom of the hoist, and Robinson, after obtaining the crank from Hare, proceeded to crank the hoist and in doing so lifted the boat about two feet out of the water. At this point Robinson was unable to raise the boat any further and asked Hare to help. Robinson testified that Hare then came over, picked up a pipe and started hitting something, that he did not know what Hare struck because Hare was under the platform and Robinson was on top of the platform, and that the boom of the hoist then fell and struck and injured the plaintiff while plaintiff was still in the boat.

Hare testified that Robinson was on a platform about four feet above the ground and asked him to come over and fix the gear, that he did not see what Robinson was doing on the platform, but that Robinson asked him to come over and knock the gear over which he

did, and as soon as he shoved the gear over the boom fell on plaintiff.

The only testimony as to the condition of the hoist was that after the accident it was inspected and there was nothing broken and there were no defects, but a small gear which fitted into a larger one had been removed from its proper position, that the boom of the hoist had been used for approximately three years and had never fallen before, that shortly after the accident another boat was hoisted out of the water with it and no difficulty was encountered, and during an examination of the hoist after the accident the safety latch was found to be open.

Plaintiff's face was mashed in, and he received very severe facial injuries, with numerous broken bones and loss of teeth. He suffered permanent injuries and disfigurement. It is not claimed the verdict was excessive.

Defendant first contends that it was a charitable organization and as such was exempt from liability for the torts of its agents, and that therefore the trial court erred in striking the first affirmative defense. In support of this contention defendant argues that charity is not limited to the giving of alms to the poor and needy, and that defendant's social purposes were such that it was for "the improvement and promotion of the happiness of man" and "tends to promote the well doing and well being of social man." Defendant also urges that even if it is not a charitable corporation, the doctrine of immunity from tort liability applies to all nonprofit corporations.

Our Supreme Court has held that property of somewhat similar corporations is not exempt from taxation on the alleged ground of a charitable use.

In *People v. Rockford Lodge B. P. O. E.*, 348 Ill. 528, the charter showed the lodge's object to be the "mutual benefit and social intercourse of its members." There

was proof that the association engaged in numerous charitable activities, such as aiding the Boy Scouts and a medical clinic for crippled and deformed children. The court said at page 532: "The appellant is not a charitable organization under the law. It is a corporation, and its character and the purpose for which it was organized must be ascertained by reference to the terms of its charter. . . . Mutual benefit and social intercourse of its members do not constitute a charitable purpose, however desirable or however beneficial."

In *Turnverein "Lincoln" v. Board of Appeals of Cook County,* 358 Ill. 135, an organization whose purpose was "Realization of the principles of humanity and of decisive progress, to be accomplished by fostering all exercises addicted to strengthen physically and mentally," was held noncharitable even though that purpose was laudable and beneficial.

In *Oak Park Club v. Lindheimer,* 369 Ill. 462, a corporation whose purpose was "to promote social intercourse and the general improvement and welfare of its members and of the community" was held to be a noncharitable organization, the court stating that "The certificate of incorporation, which is the controlling evidence of the purpose for which the organization was created, and the other evidence introduced, discloses that the chief permanent, continuous activities of the club, when the taxes in question were extended, were social and recreational in their nature, and these do not constitute a charitable purpose . . . . The fact that no profit is made is not of controlling importance . . . ."

█ It is our opinion that the facts alleged in defendant's first affirmative defense do not show that defendant was a charitable organization.

█ In the recent case of *Moore v. Moyle,* 405 Ill. 555, it was held that Polytechnic Institute, which was a charitable organization organized not for profit, was

not exempt from liability for the torts of its agents, but that the trust funds for charity of such corporation were exempt from any liability for such torts. If such a charitable corporation organized not for profit is so liable it would seem to follow that a noncharitable corporation not organized for profit is liable to at least the same extent. In the present case the defendant was not a charitable organization and it does not appear that any trust funds for charity were involved.

██ It is our opinion that there is no merit to such contentions of the defendant and that therefore the trial court did not err in striking the first affirmative defense.

██ It is urged that plaintiff was guilty of contributory negligence as a matter of law because he could have stepped out of the boat, which was in cold water about hip deep when the hoist stopped working and before the boom fell. We cannot properly say that plaintiff was guilty of contributory negligence as a matter of law.

 Defendant contends there is no evidence to support the negligence charged. It is our opinion that the evidence heretofore stated was sufficient to justify the jury in finding defendant guilty of the negligence alleged in the second and third counts. There is a question as to whether or not a recovery could be had on the first count of the complaint. Defendant made a general motion for a directed verdict at the close of all proofs. There was no request that the first count be stricken or for a directed verdict as to it. Under these circumstances it is well settled that the counts of the complaint supported by the evidence were sufficient to sustain the verdict. (*Smithers v. Henriquez,* 368 Ill. 588.)

██ Defendant contends the court erred in giving certain instructions at the request of the plaintiff. We consider it sufficient to say that in our opinion the

691

entire series of instructions fairly and adequately advised the jury as to the applicable law, and that there was no reversible error in the giving of instructions.

The judgment of the trial court is affirmed.

*Affirmed.*