IN THE MATTER OF THE ESTATE OF DANIEL S. BURROUGHS, DECEASED. JOHN S. DENSER, Executor and Trustee, Appellant, v. STATE OF MISSOURI.—No. 40307.—206 S. W. (2d) 340.

Division Two, November 10, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, December 8, 1947.

*Watts & Gentry* and *Herbert E. Bryant* for appellant.

12

*J. E. Taylor*, Attorney General, and *Will F. Berry, Jr.*, Assistant Attorney General, for respondent.

[340] WESTHUES, C.—This case involves the question of whether property devised to a trustee with directions to erect a building to be used for Masonic purposes only is exempt from inheritance tax under the provisions of Sec's. 576, 602 Mo. R. S. A., R. S. Mo., 1939. The case originated in the Probate Court of Audrain County, Missouri, where a tax of $16,330.82 was assessed. On appeal to the circuit court a like judgment was entered and the executor of the estate appealed.

The exemption from taxation is claimed on the ground that the Masonic bodies in Mexico, Missouri, for whose benefit the bequest was made, are charities within the meaning of the law and the fund devised is to be used for charitable purposes exclusively. The state contends that the devise is subject to tax for two reasons: First, that the Masonic Temple to be erected and maintained from the proceeds of the property devised will not be used exclusively for charitable purposes; second, that the charitable objects of the Masonic Lodge are not exclusively within this state. The case was submitted on an agreed statement of facts. The provisions of the will pertinent to the issues read as follows:

"I will, bequeath and devise all of the rest, residue and remainder of my property, both real and personal, of whatsoever kind and character and, wheresoever situate to John S. Denser, of Mexico, Missouri, In Trust, and as Trustee for the use and benefit of the members, present and future, of [341] the Masonic Orders of Mexico, Missouri, to-wit: Hebron Lodge No. 354, Royal Arch Chapter No. 27, and Crusade Commandery No. 23.

"The provisions of said trust being as follows: Said Trustee is hereby given full power and authority to manage and control said trust property, sell the same when ever he deems it advisable and invest and re-invest the proceeds in United States Government bonds, bonds of the State of Missouri, or of any municipality in said State. Said Trustee is further empowered and directed to use sufficient of said trust fund not to exceed the amount of One Hundred Thousand Dollars ($100,000.00) wherewith to acquire a site and to erect a building thereon to be known as the D. S. Burroughs Memorial Masonic Temple for the use of said three Masonic bodies jointly. Said building to be of a character and design and built on a site in Mexico, Missouri, as may be determined upon by said Trustee and a representative from each of said three Masonic bodies delegated to act for such purpose. Said Trustee upon the erection and completion of said building shall have supervisory control thereof so far as is necessary to keep the same in good repair and to assure that said building shall be used after its erection for Masonic Lodge purposes only. Said Trustee shall use the income from the balance of said trust fund remaining after the cost of the erection of said building as a fund for the maintenance and upkeep of said building, and the corpus of any unexpended portion of said trust fund remaining after the cost of erection of said building and its maintenance shall remain intact as a permanent endowment fund for said Masonic bodies.

"Said Trustee shall take charge and control of said trust fund and property immediately upon the final termination of administration on my estate and shall then proceed as soon as practicable to select a site for and erect thereon said building."

The will also directed that the trustee be required to give bond as fixed by the Circuit Court of Audrain County and that in case of necessity a successor trustee be appointed by the court. By a codicil the amount to be expended for the erection of a building was reduced to $80,000. The agreed statement of facts shows that the Grand Lodge of Ancient Free and Accepted Masons of the State of Missouri was incorporated under the laws of this state. Art. 10, Chap. 33, Mo. R. S. A., R. S. Mo., 1939. The Masonic Orders of Mexico mentioned in the will are subordinate to the Grand Lodge of the State. The Hebron Lodge, No. 354, was granted a charter by the Grand Lodge on October 30, 1870. The purposes of the Masonic Lodge, as set forth in the constitution and by-laws in the agreed statement of facts, are as follows:

" 'The Grand Lodge shall be the supreme Masonic authority within the State of Missouri, and by the ancient constitutions and usages of the fraternity, is, and shall be, invested with all the original essential powers and privileges belonging to the Ancient craft, and shall have power especially:

"'(1) To enact and enforce all laws and regulations for the government of the fraternity, and to alter, amend and repeal the same at pleasure.

"'(3) To establish and preserve a uniform mode of work and lectures within the ancient landmarks and customs of Masons.

"'(8) To require and collect from all brother Masons residing within the jurisdiction of this Grand Lodge, such sums of money annually, for charitable purposes, as may from time to time be provided for and be required by law.'"

"'The objects and purposes of said Order are to nurse, care for and to provide for its sick, afflicted and needy members and their families, bury the dead, care for the widows of its deceased members, and care for and educate their orphan children, and to inculcate in its members the principles of morality, temperance, benevolence and charity, and teach them their duty and true fraternal relationship to mankind.'"

A by-law prohibits the use of the word "Masonic" and the Masonic emblems for commercial purposes. The Masonic Manual of Missouri contains the following:

"'Definition of Freemasonry.

"'Freemasonry is a beautiful system of morals, veiled in allegory, and illustrated by symbols.

[342] "'Its Tenets are Brotherly Love, Relief, and Truth.

"'Its Cardinal Virtues are Temperance, Fortitude, Prudence, and Justice.

"'Its religion, if religion it may be called, is an unfeigned belief in the one living and true God.'"

It is further stipulated that all lodge meetings are opened with a prayer and an open bible is laid upon the altar in the center of the lodge. Freemasonry is taught and the members are urged to practice its precepts. The agreed statement of facts further contains a list of some of the charities supported and aided by the Masonic Lodge of Missouri. It will suffice to refer to only a few. One of the most important charitable projects is the maintenance of the Masonic Home of Missouri where indigent members, and widows and orphans of Masons are given a home. In 1945 there were eighty-three men, one hundred and fifty-seven women, twenty-three boys and eighteen girls in this home. The children are sent to school and some who wish it are given a college education. Charities outside this state include donations to aid World War I orphans of France, donations for relief in the Philippine Islands and donations for such agencies as the Red Cross and the Salvation Army.

■ We will first dispose of the contention that the property devised, even if it be considered for a charitable purpose, will be used for charities outside this state. This court in the case of In re Hall's Estate, 337 Mo. 658, 85 S. W. (2d) 621, l. c. 622, denied a claim for exemption from inheritance tax on a bequest to DePauw University on the ground that the exemption statute did not apply to donations to charities outside of this state. In the case before us, however, the property devised will, under the expressed command of the testator, be used exclusively for the erection and maintenance of a Masonic Temple for three Masonic bodies of Mexico, Missouri. Not a dollar can legitimately be used for any other purpose. We hold that the state's claim must be denied. The fact that the Masonic bodies who will occupy the temple may and do give money raised by assessments and donations to foreign charities does not destroy the exemption as provided for in Sec's. 576 and 602, supra. This, for the reason that the property devised in this case must, under the terms of the will, be used in this state only.

■ Now to the difficult question of whether the Masonic Temple to be erected and maintained by the bequest in question is a gift to a charitable institution and whether the temple is to be used exclusively for charitable purposes. Numerous cases of this character have been before the courts of the various states, in fact a considerable number of cases involving the Masonic Order. At first glance these cases seem to be in hopeless conflict, however, when closely analyzed much of the conflict disappears. To begin with we may eliminate all the cases where exemption was denied because a portion of the building sought to be exempted was leased for commercial purposes. The uniform ruling in those cases is that the property is not exempt even though the proceeds were used for charitable purposes. For example, see Fitterer v. Crawford, 157 Mo. 51, 57 S. W. 532; State ex rel. St. Louis Young Men's Christian Ass'n. v. Gehner, City Assessor, et al., 320 Mo. 1172, 11 S. W. (2d) 30; Hibernian Benevolent Society v. Kelly, 28 Oregon 173, l. c. 193, 42 Pac. 3; Fort Des Moines Lodge No. 25, I. O. O. F. v. County of Polk, 56 Iowa 34, l. c. 36, 8 N. W. 687; City of Indianapolis v. The Grand Master, etc., of The Grand Lodge of Indiana, 25 Ind. 518, l. c. 522.

We may also eliminate those cases decided in states where the exemption law requires the property to be devoted exclusively to public charities. There seems to be a conflict of authority as to what does and what does not constitute a public charity and many cases have turned on the point of whether the property was devoted to public charity. See Widows' and Orphans' Home of Odd Fellows of Kentucky v. Commonwealth, 103 S. W. 354, 126 Ky. 386; City of Bangor v. Rising Virtue Lodge, No. 10, Free & Accepted Masons, 73 Me. 428; also, 61 C. J. 453, Sec. 504, and cases there cited. We refrain from

expressing our views on the subject because our constitution and statute do not use the word "public" [343] with reference to charity. We find the subject treated, however, in Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2d) 826, l. c. 829, 830 (4, 5).

Let us examine the cases where the building sought to be exempted was used for lodge purposes only and no part thereof was leased for commercial purposes. We must keep in mind the wording of Sec. 6, Art. 10, Missouri Constitution, 1945, and Sec. 602 of our statute which expressly make reference to and preclude exemptions on any property that is held for private or corporate gain or where the corporate charter authorizes such a use. We must also, for the purpose of this case, take the agreed statement of facts as controlling and assume that no facts exist, which are not contained in the agreed statement of facts, that would affect the question to be decided. This agreed statement of facts discloses that no activity of the Masonic Orders in Mexico has the slightest tinge of commercialism. The charter does not authorize those Masonic Orders to engage in any activity through which any individual would obtain any financial benefit or gain. The agreed statement of facts does show that the lodges at Mexico aid the parent or Grand Lodge in permanent, fixed and continuous projects of a charitable nature; for example, the Masonic Home of Missouri where indigent Masons, widows and orphans of Masons are provided with a home. Contributions to maintain this home are mandatory upon the subordinate lodges and chapters. Does the fact that the building to be erected by the trustee is to be used for holding lodge meetings and teaching Masonry and its principles, as indicated by the agreed statement of facts, defeat the exemption here claimed? We find cases where that question has been answered both "yes" and "no." In The People v. Dixon Masonic Bldg. Ass'n., 348 Ill. 593, 181 N. E. 434, a majority opinion, the answer was "no." In the case of Ancient & Accepted Scottish Rite of Freemasonry v. Board of County Com'rs., 241 N. W. (Neb.) 93, the answer was that a Masonic Temple is exempt from taxation. This latter case overruled two previous cases where exemptions had been denied. Numerous cases will be found cited in the two opinions. For other cases on this question see Masonic Temple Society v. State of West Virginia, 22 A. L. R. 892, Annotations at pages 908 and 914, under title "Masons."

After careful consideration of this question and after reading many cases we conclude that the property devised to the trustee in this case, for the purpose of erecting a Masonic Temple to be used exclusively by the Masonic bodies of Mexico, Missouri, for Masonic purposes only, must be exempt from the inheritance tax. We reach this conclusion in view of the many cases from outside this state and also in view of what this court has said in a number of cases. For ex-

ample, this court cn banc in the case of Young Women's Christian Ass'n. v. Baumann, 344 Mo. 898, 130 S. W. (2d) 499, l. c. 502 (2-5), had the following to say:

"In respondent's brief much argument is used as to whether appellant's property was devoted exclusively to purely charitable purposes, but, it must be borne in mind, that the law is satisfied if the uses be either charitable, religious or educational, and the same use may partake of more than one of these purposes. A large part of the activities of the Association clearly falls within one or another of the exempted purposes."

In Fitterer v. Crawford, 157 Mo. 51, l. c. 63, 57 S. W. 532, this court said:

"Our conclusion is that Masonic lodges are organized for charitable and benevolent purposes, with no incentive to private or corporate gain, but whose revenues derived from whatever source they may be, are applied to the payment of their current expenses, and the relief of their afflicted and needy members and their families, and although their charity is restricted to such use they are charitable institutions."

Many cases from other states have held that the Masonic Lodge is a charitable institution and exempt from taxation if the property sought to be exempted is being used exclusively for Masonic purposes. See State ex rel. Bertel et al. v. Board of Assessors, 34 La. Ann. 574; Plattsmouth Lodge, No. 6, A. F. & A. M. v. Cass County, 79 Neb. 463, 113 N. W. 167; Horton v. Colorado [344] Springs Masonic Bldg. Soc., 64 Colo. 529, 173 Pac. 61. See also 61 C. J. 495, cases cited under note 34. There is respectable authority to the contrary. See City of Houston v. Scottish Rite Benevolent Ass'n., 230 S. W. (Tex.) 978, also 233 S. W. 551; Masons et al. v. Zimmerman, 81 Kan. 799, 106 P. 1005.

This court, as evidenced by the cases above referred to, takes the view that a Masonic Temple used exclusively for Masonic purposes is exempt from taxation. It may be that the ruling in the Fitterer case, supra, to the effect that Masonic Lodges are charitable institutions, was obiter. In that case exemption was denied because a portion of the building sought to be exempted was rented for commercial purposes. The ruling, however, even though obiter is in harmony with the trend of this court's opinions in later cases. See Young Women's Christian Ass'n. v. Baumann, supra, 344 Mo. 898, 130 S. W. (2d) 499, l. c. 502 (2-5); Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2d) 826, l. c. 829, 830 (4, 5). In the case of Ancient & Accepted Scottish Rite of Freemasonry v. Board of County Com'rs., 241 N. W. 93, l. c. 97, the Supreme Court of Nebraska had the following to say:

"And so, while it is a well-settled general rule that exemptions from taxation are to be strictly construed, and their operation is never

to be extended by construction, the power and the right of the state to tax are always presumed, and the exemption must be clearly granted. This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the legislature, but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption. 25 R. C. L. 1093, sec. 309.''

We deem the above language appropriate to the situation before us. We are strengthened in our view by the wording of our constitution and statute above referred to wherein both read in substance that all property, real and personal, not held for private or corporate profit and used exclusively for charitable purposes may be exempt from taxation. We realize that financial profit for gain is not always the real test. In the case before us there is no suggestion of any commercialism. This court in the case of St. Louis Lodge, No. 9, B. P. O. E. v. Koeln, 262 Mo. 444, 171 S. W. 329, denied exemption from taxation on a building that was used by the Elks Lodge for lodge purposes. All of the profits of the lodge were given to charity but this court pointed out that no fee was charged for entrance to shows, dances, billiards or cards all of which were furnished in the building to members at the expense of the lodge. The court held the charitable purposes were secondary and incidental; that the main purpose of the lodge was to furnish social entertainment for its members. It was on this ground that the Supreme Court of Illinois denied exemption in the case of People ex rel. Nelson, County Collector v. Rockford Masonic Temple, 348 Ill. 567, 181 N. E. 428, 429. It was pointed out that the charter in that case stated the primary purpose of the corporation to be ''the mutual benefit and social intercourse of its members.'' Note what was said in a concurring opinion in that case:

''That the Masonic order is a beneficient and charitable organization has been so many times held by this and other courts of this country as to put that question beyond the realm of debate.''

''That the appellee corporation in this case is affiliated with the Masonic order is shown; but, as we have stated, its primary purpose is not shown in this record to be that of carrying out the charitable purpose of the Masonic order. Charity, in a legal sense, is not confined to mere almsgiving or relief of poverty and distress but embraces the improvement and happiness of man. A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man.''

See also 61 C. J. 494, Sec. 582. In the case before us there is nothing in the agreed statement of facts to show that the Masonic Orders of Mexico are engaged in [345] any activities, social or otherwise, except those of the Masonic Order. The greater weight of

authority from other states is that exemption from taxation in such circumstances should be sustained. Our own cases above referred to support this theory.

We rule, therefore, that the property devised by the will in this case should be exempt from the inheritance tax. The judgment is therefore reversed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.